[Cite as *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

HERITAGE COURT, L.L.C.,

    APPELLEE,                              CASE NO. 8-09-19

    v.

MERRITT,                                  ERRATUM TO OPINION

    APPELLANT.

Appeal from Bellefontaine Municipal Court
Trial Court No. 09 CVG 978

**Judgment Affirmed**

Date of Decision: April 19, 2010

APPEARANCES:

    **Ann E. Beck,** for appellee.

    **Byron K. Bonar and Lauren E. Dreshman,** for appellant.

**ROGERS, Judge.**

**{¶1}** Defendant-appellant, April Merritt, appeals the judgment of the Bellefontaine Municipal Court granting summary judgment in favor of plaintiff-appellee, Heritage Court, L.L.C. ("Heritage"), and ordering her to vacate her government-subsidized apartment. On appeal, Merritt argues that the trial court erred as a matter of law in holding that Lawrence Beair was an unauthorized resident of her apartment, that the trial court's finding that Beair was residing at the apartment was against the manifest weight of the evidence, and that the trial court erred by failing to find that the restriction on guest visitation in her lease was unreasonable and violated her constitutional right to privacy. Based upon the following, we affirm the judgment of the trial court.

**{¶2}** In September 2009, Heritage filed a complaint for forced entry and detainer against Merritt and "John Doe, Unauthorized tenant," stating that Merritt was a tenant of its premises at 1044 Heritage Court in Bellefontaine, Ohio, rent for which was subsidized by the Department of Housing and Urban Development ("HUD"). Heritage alleged that Merritt had failed to comply with the terms of her lease by (1) allowing unauthorized persons to reside in the unit, including Larry Beair, (2) allowing visitors to disturb the rights and comfort of neighbors, and (3) failing to report changes in household income. Additionally, Heritage stated that it had served Merritt with a 30-day notice in writing to leave the premises on June

12, 2009, and that she had refused to leave and wrongfully maintained possession of the property. Heritage attached to its complaint a copy of the lease for the government-subsidized apartment, the terms of which provided as follows:

> 13. General Restrictions: The TENANT must live in the unit and the unit must be the TENANT'S only place of residence. The TENANT shall use the premises only as a private dwelling for himself/herself and the individuals listed on the <u>Certification and Recertification of Tenant Eligibility</u>. The TENANT agrees to permit others to reside in the unit only after obtaining the prior written approval of the LANDLORD. * * *
>
> 14. Rules: The TENANT agrees to obey the House Rules which are Attachment No. 3 to this Agreement. The TENANT agrees to obey additional rules established after the effective date of this Agreement. * * *

(Underlining and capitalization sic.)

**{¶3}** Additionally, the record reflects that Merritt signed a "Guest Rules Lease Addendum" in July 2008, which provided that it was incorporated into the lease and that

> [r]esidents' guests may not stay at the community for longer than a total of one (1) week in any six-month period, unless they get prior consent from the owner or manager. Guests, who will be staying longer than one (1) week in any six-month period, must fill out an application to have their names added to the lease for the apartment they are visiting.

**{¶4}** In October 2009, Merritt filed an answer to Heritage's complaint, denying the allegations concerning the unauthorized tenant. Contemporaneously,

Merritt filed a motion to dismiss or motion for summary judgment,[1] in which she asserted that Heritage's notice terminating the lease was insufficient under federal requirements because it did not state the reasons for eviction with specificity. Thereafter, the trial court held a hearing on the eviction action, at which the following testimony was heard.

{¶5} Merritt testified that she signed a lease addendum with Heritage regarding visitors, which provided that she was not permitted to have a guest stay at the community for longer than a total of one week in any six-month period without written consent; that Larry Beair was her boyfriend of approximately five months; that Beair stayed overnight at her apartment approximately one night every two weeks and spent the day approximately four days out of the week at her apartment; that at night, Beair lived either at his parents' house or at his friend's house; that Beair received a piece of mail addressed to him at 1044 Heritage Court, but that he used her address only because the mail pertained to a paternity test that he did not want his parents to see; that Beair was at her apartment in June 2008 when police officers came to investigate reports of a minor receiving a tattoo at her apartment; and that Beair did not keep any clothing at her apartment except one or two items.

---

[1] We note that the memorandum in support is partially illegible.

{¶6} Darlene O'Brien testified that she was the manager at the Heritage Court Apartments; that she served a notice to leave the premises on Merritt on June 12, 2009; that she believed Beair was residing at Merritt's apartment because she had seen him standing in the doorway of the apartment in his boxer shorts, being "very casual," walking to the property, and opening the door; that she had observed Beair in an altercation in the parking lot with his wife, Sasha Beair, and Merritt; that after the parking-lot altercation, she observed Beair's mother arrive at the apartment complex and carry items such as stereos, clothing, speakers, and Rubbermaid containers into Merritt's apartment; that she had received numerous telephone calls and anonymous letters from other tenants concerning problems with Beair; that she worked at Heritage Court five days a week and had seen Beair coming in and out of Merritt's apartment approximately six times during a five-day period; that since she served the notice of eviction, she still observed Beair at Merritt's apartment on a regular basis, although he walked behind the maintenance building rather than on the sidewalk; that she requested that Merritt produce either six months' of rent receipts, a signed lease, or a current utility bill demonstrating Beair's address, but Merritt did not produce any of those documents; that the lease addendum limited guests to a total of seven overnight stays in a six-month period; and that she had observed Beair at Merritt's apartment for approximately six months. On cross-examination, O'Brien testified that she did not know for certain

whether Beair stayed overnight at Merritt's apartment, but that she believed he did because, at least three days per week, he was there when she left work and was still present when she came into work at 7:30 a.m.

{¶7} Beair testified that he lived at his friend's trailer in Alpine Parkway or with his mother; that he and Merritt had been in a relationship for approximately four or five months; that he stayed at Merritt's apartment approximately one night per week; that he did not store any of his clothing at Merritt's apartment; that he had one piece of mail sent to him at Merritt's address because it pertained to a paternity action that he did not want his parents to know about; that he did not have a lease or rental agreement either with his friend at Alpine Parkway or with his parents; that he was at Merritt's apartment almost every day to visit her and help her with her children; that after the domestic dispute in the parking lot with his wife and Merritt, he moved some of his personal property into Merritt's apartment, but that his parents came and retrieved it the next day; and that he was unemployed and was not allowed to become a resident at the Heritage Court Apartments because he had a drug conviction and had previously been evicted from an apartment.

{¶8} Joanne Beair testified that she was Beair's mother; that Beair did not live with Merritt; that Beair received his mail at his parents' house; that Beair kept some of his clothing at his parents' house and some at his friend's house; and that

she did not recall transporting any of Beair's personal property to Merritt's apartment in June 2009. However, she then testified that she did remember taking some things to Merritt's apartment because Beair's wife wanted him to leave her apartment, so she put the things into her car and took them to Merritt's apartment because she thought he was there, but that Beair did not take any of the property.

{¶9} Additionally, at the hearing, Merritt's counsel argued that the restriction limiting a guest's visitation to one week out of a six-month period was unreasonable and unconstitutional, as it violated her constitutional right to privacy.

{¶10} After the testimony was heard, the trial court orally ruled that the restriction on guests in the lease was neither unreasonable nor unconstitutional, issued a judgment entry finding in Heritage's favor, and ordered that Merritt and Beair vacate the premises by October 31, 2009.

{¶11} It is from this judgment that Merritt appeals,[2] presenting the following assignments of error for our review.

*Assignment of Error No. I*

The trial court erred as a matter of law by holding that Lawrence Beair was a resident at Ms. Merritt's apartment.

*Assignment of Error No. II*

The trial court's finding that Lawrence Beair was a resident at Ms. Merritt's apartment is against the manifest weight of the evidence.

---

[2] We note that Heritage did not file an appellate brief.

*Assignment of Error No. III*

The trial court erred by failing to declare a violation of Ms. Merritt's constitutional right to privacy when the trial court interpreted the lease to require that a guest be considered a resident if that guest stays at an apartment seven separate non-consecutive days in a six month period.

*Assignment of Error No. I*

**{¶12}** In her first assignment of error, Merritt argues that the trial court erred as a matter of law by holding that Beair was a resident at her apartment. Specifically, Merritt argues that the trial court misinterpreted the lease by not defining the term "week" as seven consecutive days, under which Beair would not have been considered a "resident" and the guest rules would not have been violated. We disagree.

**{¶13}** Interpretation of written contracts, including lease agreements, involves a question of law. *Lovewell v. Physicians Ins. Co. of Ohio* (1997), 79 Ohio St.3d 143, 144. Appellate courts review issues of law de novo. Id.

**{¶14}** It is well established that leases are contracts and, as such, are subject to traditional rules governing contract interpretation. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 156 Ohio App.3d 65, 2004-Ohio-411, ¶29, citing *Christe v. GMS Mgt. Co.* (1997), 124 Ohio App.3d 84, 88; *Frenchtown Square Partnership v. Lemstone, Inc.*, 7th Dist. No. 99CA300, 2001 WL 503068; *Hamilton v. Briede* (Apr. 21, 1997), 12th Dist. No. CA96-11-227, 1997 WL

194896. The fundamental purpose of contract interpretation is to determine and carry out the intention of the parties, and the intention of the parties is presumed to lie in the language used in the lease agreement. *Mark-It Place Foods*, 2004-Ohio-411, at ¶29, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Co.* (1999), 86 Ohio St.3d 270, 273; Id., citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361. In interpreting the language of a lease agreement, common words are presumed to hold their ordinary meaning unless "(1) manifest absurdity results, or (2) some other meaning is clearly evidenced from the instrument." Id., citing *Foster Wheeler* at 361.

{¶15} Here, the "Guest Rules Lease Addendum" incorporated into Merritt's lease provided that "[r]esidents' guests may not stay at the community for longer than a *total of one (1) week in any six-month period*, unless they get prior consent from the owner or manager. Guests, who will be staying longer than *one (1) week in any six-month period*, must fill out an application to have their names added to the lease for the apartment they are visiting." (Emphasis added.) At issue here is whether the phrases "total of one (1) week in any six-month period" and "one (1) week in any six-month period" mean a period of seven aggregate days in a six-month period or a period of seven consecutive days in a six-month period.

{¶16} Black's Law Dictionary defines "total" as "Whole; not divided; full; complete" and defines "week" as "A period of seven consecutive days beginning on either Sunday or Monday" or "Any consecutive seven-day period." Black's Law Dictionary (9th Ed.2009) 1627, 1731. The American Heritage Dictionary defines "total" as "The amount or quantity obtained by addition" and defines "week" as "A period of seven days * * *." American Heritage Dictionary (2d Ed.College Ed.1985) 1280, 1371.

{¶17} Although at least one source has defined "week" as a "consecutive seven-day period," we find it significant that the first mention of the one-week term in the lease addendum is preceded by the term "total," which modifies the term "one (1) week." If we interpreted "one (1) week" as Merritt contends, as a period of seven consecutive days, the term "total" would be rendered meaningless. Additionally, the fact that the lease addendum specifies that the one-week period may not occur *in any six-month period* strengthens the argument that the term "one (1) week" means seven aggregate days. Had the drafter intended "one (1) week" to mean one consecutive seven-day period, there would be no reason for the drafter to specify a six-month period.

{¶18} Finally, we note that under Merritt's suggested interpretation of the lease addendum, a guest could conceivably stay at the community for seven consecutive days out of every eight-day period during the entire lease period, and,

as long as he did not stay at the premises on the eighth day, he would not be required to obtain consent from the management or have his name added to the lease. We cannot find that the parties intended this result in executing the lease agreement and lease addendum. See, e.g., *Norwich Hous. Auth. v. Majewski* (Conn.Super.2000), 26 Conn.L.Rptr. 258 (finding that a lease prohibiting guests from staying more than seven days during a one-month period unambiguously meant seven aggregate days, as construing the term as consecutive days would allow a guest to inhabit the apartment for seven out of every eight days for the entire lease term, clearly contrary to the intention of the parties in light of the entire lease agreement).

{¶19} Due to the preceding, we find that the term "one (1) week" is unambiguous as used in the lease addendum. Accordingly, we find that the trial court appropriately construed the guest-rules lease addendum as referring to an aggregate seven days within a six-month period, and we overrule Merritt's first assignment of error.

*Assignment of Error No. II*

{¶20} In her second assignment of error, Merritt argues that the trial court's finding that Beair was a resident at her apartment was against the manifest weight of the evidence. Specifically, Merritt argues that there was no evidence that Beair was a resident of her apartment, since both she and Beair testified that

he only stayed overnight approximately one night every one to two weeks and that based on the totality of the circumstances, he maintained residences elsewhere.

{¶21} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶24, citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. Id.

{¶22} Because we determined in our analysis of Merritt's first assignment of error that the lease term regarding visitation prohibited guests from staying at the community longer than seven aggregate days in a six-month period without obtaining prior consent of the management or applying to have their names added to the lease, and, because Merritt and Beair's own testimony established that Beair stayed at the residence approximately once every one to two weeks for a four- or five-month period, we consequently find that sufficient evidence existed that Beair stayed at the residence more than seven days in a six-month period and that Merritt thereby violated the terms of her lease.

{¶23} Accordingly, we overrule Merritt's second assignment of error.

*Assignment of Error No. III*

{¶24} In her third assignment of error, Merritt argues that the trial court erred by failing to find that the lease addendum violated her constitutional right to privacy because, she alleges, the addendum required that a guest be considered a resident if that guest stayed at an apartment seven separate nonconsecutive days in a six-month period. Specifically, Merritt argues that freedom to invite guests into one's home is within the zone of privacy that extends to landlord-tenant relationships and that the trial court's interpretation of the lease addendum unduly burdened her right to make decisions regarding inviting guests into her home and intruded on her right to control private aspects of her life.

{¶25} R.C. 5321.14 governs unconscionable agreements among landlords and tenants in Ohio and provides as follows:

> If the court as a matter of law finds a rental agreement, or any clause thereof, to have been unconscionable at the time it was made, it may refuse to enforce the rental agreement or it may enforce the remainder of the rental agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

R.C. 5321.14(A).

{¶26} Additionally, Ohio courts have held that the due-process protections of the Fourteenth Amendment to the United States Constitution are applicable to landlords who lease federally subsidized housing to low-income tenants and that

tenants receiving federal housing-assistance payments have a constitutionally protected property interest in their continued occupancy of subsidized housing. *Showe Mgt. Corp. v. Hazelbaker*, 12th Dist. No. CA2005-11-031, 2006-Ohio-3619, ¶14; *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426, citing *Cincinnati Metro. Hous. Auth. v. Harris* (June 15, 1983), 1st Dist. Nos. C-820540 and C-820541, 1983 WL 8893; *Joy v. Daniels* (C.A.4, 1973), 479 F.2d 1236; *Lopez v. Henry Phipps Plaza S., Inc.* (C.A.2, 1974), 498 F.2d 937; *Escalera v. New York City Hous. Auth.* (C.A.2, 1970), 425 F.2d 853; *Geneva Towers Tenants Org. v. Federated Mtge. Investors* (C.A.9, 1974), 504 F.2d 483.

**{¶27}** Further, Ohio courts have held that landlords operating federal public-housing projects are required to comply with all applicable federal rules and regulations. *Ivywood Apts. v. Bennett* (1976), 51 Ohio App.2d 209, 214. Section 1715z-1b, Title 12, U.S. Code, governing tenant participation in multifamily housing projects, provides as follows:

> (2) project owners not interfere with the efforts of tenants to obtain rent subsidies or other public assistance;
>
> (3) leases approved by the Secretary provide that tenants may not be evicted without good cause or without adequate notice of the reasons therefor and *do not contain unreasonable terms and conditions*. * * *

(Emphasis added.)  Additionally, Section 966.4, Title 24, C.F.R., governing lease requirements under HUD, provides that:

> (d) Tenant's right to use and occupancy. (1) The lease shall provide that the tenant shall have the right to exclusive use and occupancy of the leased unit by the members of the household authorized to reside in the unit in accordance with the lease, *including reasonable accommodation of their guests*. The term guest is defined in 24 CFR 5.100.

(Emphasis added.) As used in Section 966.4, Title 24, C.F.R., "guest" is defined as "a person temporarily staying in the unit with the consent of a tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant. * * *." Section 5.100, Title 24, C.F.R.

{¶28} Regarding the reasonable accommodation of guests, an Ohio court has found that "even tenants in subsidized housing do not live at the whim of the landlord and may have overnight guests if they choose," but that it is not unfair for the terms of a lease "to require a tenant to notify the management of a federally funded low-income housing project of changes within the household which may alter the rate of rent or which may require a larger apartment." *New Boston Kiwanis Hous. Dev. Corp. v. Sparks* (Apr. 14, 1992), 4th Dist. No. 1957, 1992 WL 79561.

{¶29} Although it does not appear that an Ohio court has examined situations substantially similar to that sub judice, several other state and federal courts have.

{¶30} In *Messiah Baptist Hous. Dev. Fund Co., Inc. v. Rosser* (1977), 92 Misc.2d 383, 400 N.Y.S.2d 306, a landlord leasing public housing sought to evict

its tenant on the basis that she permitted an unrelated male to visit her apartment and remain overnight an average of two to three nights per week. The landlord alleged that the tenant's actions violated the terms of the lease regarding family composition and eligibility requirements and the lease provision requiring that the apartment not be used for any purpose other than a private dwelling for the tenant and her family. The court concluded that the terms of the lease did not specifically prohibit the tenant's behavior, and thus that she could not be evicted on that basis.

{¶31} In *McKenna v. Peekskill Hous. Auth.* (C.A.2, 1981), 647 F.2d 332, tenants of a public-housing project sought injunctive and declaratory relief against the housing authority due to its "house rule" regulating visitors, which they argued violated their constitutional rights to privacy and freedom of association. The rule in question required tenants to register *all* overnight visitors with the management office and obtain approval from the management prior to the visit. The court concluded that the rule "clearly limited the tenants' freedom to associate and intruded on their privacy" due to the fact that it required all overnight guests to register, that visits had to be approved under a broad standard of "reasonableness," and that the management logged the identities of the guests into the tenant files. 647 F.2d at 335. The court acknowledged that the housing authority had a legitimate interest in "maintaining safe, decent housing and in keeping track of occupancy and eligibility in public housing," but that this interest needed to be

served by a reasonably narrow means, which the housing authority had failed to demonstrate. Id.

**{¶32}** In *Ashley Court Ents. v. Whittaker* (N.J.App.1991), 592 A.2d 1228, the landlord of a public-housing project terminated a tenant's lease on the basis that she had an unauthorized occupant in her apartment in violation of the lease terms. The pertinent term of the lease provided that "[i]t is understood and agreed between LANDLORD and TENANT that the tenant may be permitted to have a guest(s) visit their household. However, an adult person(s) or children making reoccurring visits or one continuous visit of seven (7) or more days and nights in a thirty (30) day period will be considered a violation of the lease and cause for termination." 592 A.2d at 1231. The court found that a violation of this term of the lease could not be the basis for an eviction action because the visitor restriction was unreasonable and interfered with the covenant of quiet enjoyment set forth in the lease, and thus was unenforceable.

**{¶33}** In *Ritter v. Cecil Cty. Office of Hous. & Community Dev.* (C.A.4, 1994), 33 F.3d 323, a public-housing agency terminated the receipt of federal housing assistance by a tenant upon determining that nonfamily members had been residing at her subsidized apartment for longer than the two-week visitation period for nonfamily members permitted by a housing-agency rule. The tenant brought an action against the housing agency pursuant to Section 1983, Title 42,

U.S. Code, arguing that the two-week visitation rule was not permitted by the applicable federal regulations governing the housing-project program and that the rule violated her constitutional rights to privacy and freedom of association.

**{¶34}** The rule at issue in *Ritter* provided that "[a]ll families who receive assistance from the [housing agency] are entitled to have house guests. Because HUD regulations do not specify the length of reasonable stay by a house guest, the [housing agency] will interpret 'reasonable stay' as not to exceed two (2) weeks in any one year cycle. House guests staying beyond 2 weeks total should be reported to the [housing agency] as "additional" family members." 33 F.3d at 325.

**{¶35}** The tenant in *Ritter* questioned the reasonableness of the guest-visitation rule, arguing that "a rule that defines residency as any visitation exceeding two weeks is not authorized by statute and that the agency should have conducted a more general inquiry into whether [her guest] was a "resident" without relying on the harsh two-week rule." 33 F.3d at 328. The court acknowledged that "[the tenant's] argument presents the frequently occurring problem of drawing lines in gray areas that do not readily lend themselves to definition by line-drawing. In the final analysis, no houseguest is permanent." 33 F.3d at 329. Ultimately, the court concluded that the housing agency acceptably interpreted the federal regulations' requirement that the unit be used only for the residence of the approved family by establishing a two-week period as

distinguishing a guest's visitation from an improper residency. Thus, the court found that the rule was not inconsistent with federal regulations nor unreasonable.

{¶36} In *Norwich Hous. Auth.*, 26 Conn.L.Rptr. 258, a housing authority evicted a tenant for permitting an unauthorized person to become an occupant of her apartment without obtaining its consent. The lease was month-to-month, and the provision at issue provided that "[g]uests may stay in your apartment for seven (7) days without the prior approval of the authority. However, at the expiration of this seven (7) day period, you must have the authority's approval for any guests to stay in your apartment. Requests for guests to remain beyond this (7) day period should be made in writing to the executive director of the authority." Id. The tenant argued that this guest policy was unenforceable because it violated her constitutional right to privacy. The court found that as the lease contained a provision specifically addressing visitation and requiring approval for guests staying more than seven days during the one-month lease term, it was distinguishable from *Rosser*, 400 N.Y.S.2d 306, which contained no such lease provision, and from *Whittaker*, 592 A.2d 1228, which flatly prohibited guests from staying beyond the visitation period, with no possibility of management approval beyond that period. The court further found that unlike *McKenna*, 647 F.2d 332, the rule did not require tenants to register and obtain prior approval for any and

every overnight guest, and thus, that it was less intrusive and did not constitute an invasion of the tenant's privacy.

**{¶37}** Here, the term of the lease restricting visitation at Heritage prohibited guests from staying at the community "for longer than a total of one (1) week in any six-month period, *unless they get prior consent from the owner or manager*." (Emphasis added.) The aggregate seven days of visitation per six-month period permitted in the lease is virtually identical to the two-week period of visitation per one-year cycle found to be reasonable under the federal regulations by the court in *Ritter,* 33 F.3d 323. Additionally, the visitation requirement at issue does not reach the restrictiveness of those presented in *McKenna,* 647 F.2d 332, and *Whittaker*, 592 A.2d 1228, as it does not require tenants to register *all* overnight visitors and obtain prior approval from the management, and it does not flatly prohibit all visitations beyond the defined period. In contrast, the provision states that visitation may be extended beyond the one-week period upon management approval. Finally, in contrast to *Rosser*, 400 N.Y.S.2d 306, and similar to *Majewski*, 26 Conn.L.Rptr. 258, the lease addendum contains a term specifically regulating visitation. In light of the preceding, we find that the guest restriction is neither unreasonable under the applicable regulations nor in violation of Merritt's constitutional right to privacy.

**{¶38}** Accordingly, we overrule Merritt's third assignment of error.

{¶39} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

WILLAMOWSKI, P.J., and PRESTON, J., concur.

_____