[Cite as *Wells Fargo Bank, N.A. v. Freed*, 2012-Ohio-5941.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

**WELLS FARGO BANK NA,**

    **PLAINTIFF-APPELLEE,**          **CASE NO.  5-12-01**

    **v.**

**TERRY L. FREED, ET AL.,**               **O P I N I O N**

    **DEFENDANTS-APPELLANTS.**

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2009 F 189**

**Judgment Affirmed**

**Date of Decision:   December 17, 2012**

**APPEARANCES:**

    *Rick L. Brunner, Patrick M. Quinn and Elizabeth A. Mote*
    **for Appellants**

    *James S. Wertheim and Rose Marie L. Fiore*  **for Appellee**

**ROGERS, J.**

{¶1} Defendants-Appellants, Terry Freed and Taletha Freed (collectively, "the Freeds"), appeal the judgment of the Court of Common Pleas of Hancock County granting a foreclosure decree in favor of Plaintiff-Appellee, Wells Fargo Bank, N.A., as Trustee ("Trustee"),[1] that entitled it to recover the full amount due and owing under the Freeds' note. On appeal, the Freeds argue since Trustee has not demonstrated that it is a holder or nonholder in possession with rights of a holder, it has no standing to prosecute this action. The Freeds also claim that it was erroneous for the trial court to enter judgment for the amount due and payable under the note. For the following reasons, we affirm the judgment of the trial court.

{¶2} On April 24, 2007, the Freeds executed a promissory note in the amount of $308,000 ("Note") in favor of Option One Mortgage Corp. ("OOMC"). The Freeds executed and delivered to OOMC a mortgage ("Mortgage") on their residential property as security for the Note and Mortgage. In March 2009, Trustee initiated a foreclosure action against the Freeds for being in default on the Note. To show its legal entitlement to enforce the Note, Trustee offered the

---

[1] The full name of Defendant-Appellee is Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007-6.

following documents: (1) the allonge to the Note[2]; (2) a Pooling and Servicing Agreement ("PSA"); (3) a Mortgage Loan Purchase Agreement between OOMC, as seller, and Option One Mortgage Acceptance Corporation ("OOMAC"), as buyer ("the Agreement"); (4) an Assignment of Mortgage ("the Assignment"); and (5) a Power of Attorney ("POA").

{¶3} The allonge suffered from various irregularities. It was undated and was signed by an unidentified person. Further, the allonge purportedly showed negotiation from OOMC to "Wells Fargo, N.A." and not Trustee. The Freeds focused on these irregularities, as well as purported flaws in the other documents, in opposing Trustee's attempt to enforce the Note.

{¶4} The trial court denied the parties' respective motions for summary judgment.[3] The case then proceeded to a bench trial on November 14, 2011. At trial, the following evidence was admitted.

{¶5} On direct examination, Roger Kistler testified that he was the Vice President of the Records and Collateral Management Department for American Home Mortgage Servicing, Inc. ("AHMSI"). AHMSI is the current servicer of the

---

[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* 88 (9th Ed.2009). The former version of the Uniform Commercial Code only allowed allonges where the original instrument no longer had sufficient space for indorsements. *Id.* However, under Ohio's current version of the Uniform Commercial Code, an allonge is valid even if the original instrument has sufficient space for indorsements. *See* R.C. 1303.24(A)(2).

[3] There were numerous filings, and motions for summary judgment, at the trial level on behalf of both parties.

Freeds' loan. Kistler testified that he was authorized to speak on behalf of Trustee pursuant to the PSA and via the POA from Trustee.[4]

**{¶6}** According to Kistler, OOMC was the initial lender and servicer of the Freeds' loan. It used Trustee as its warehouse bank custodian. In April 2008, AHMSI purchased the right to service the Freeds' loan. As the successor servicer, AHMSI was familiar with the practice of OOMC in its management of original collateral files.

**{¶7}** As to the allonge, Kistler's testimony included the following facts. He stated that the allonge was in the collateral file as of May 30, 2007, the date on which the trust custodian must have received the file. Further, OOMC's practice was to maintain the documents associated with the loan in a manila folder with metal brackets to physically attach the documents to the folder. When given the original collateral file, Kistler indicated that the allonge was directly behind the Note in the file, secured by metal brackets to the file folder, and that when holding the folder up, neither the Note nor the allonge fell out.

**{¶8}** Kistler then provided the following testimony regarding the import of the PSA. In effect, Kistler maintained that the PSA demonstrated both the transfer of the Freeds' loan into the trust that Trustee administers and Trustee's resulting ability to enforce the Note. The PSA was dated May 1, 2007, which was the

---

[4] Joint Exhibit Five is a copy of the Limited Power of Attorney entered into June 8, 2009 by Wells Fargo appointing AHMSI as its attorney-in-fact.

-4-

"cutoff date," and it identified May 30, 2007 as the "closing date." Trial Tr., p. 37. The "closing date" was the final date that all loans either had to be included or withdrawn on the mortgage loan schedule attached to the PSA.

{¶9} The PSA listed OOMAC as the depositor, which was the "entity that collects all of the mortgage loans from the different originators or established trusts to act as the conduit for the loans to flow into the trust." *Id*. at 38. Meanwhile, OOMC was listed as the servicer, and Trustee was listed as the trustee of Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007-6. The PSA was signed by virtue of electronic signatures.

{¶10} OOMAC did not own the rights to the Freeds' Note on May 1, 2007. However, it did receive the rights to the Note upon the May 17, 2007 execution of the Agreement, which showed that OOMC transferred the Freeds' Note to OOMAC. According to the terms of the PSA, OOMAC then transferred the Note into the trust. As a result, Kistler testified that the Note was identified in the PSA's mortgage loan schedule as being deposited into the trust. The copy of the PSA's mortgage loan schedule that was admitted into evidence was mostly redacted. But, the non-redacted parts identify the Note and its position in the trust. Indeed, the schedule includes multiple references to the Freeds' loan. *See* Joint Exhibit 6, p. 263, 306, 350, 393, 480, 522, 567, 610, 697.

{¶11} As suggested in Kistler's testimony, the PSA's terms indicate that upon the deposit of the loans into the trust, Trustee is empowered to act for the benefit of the trustors. Section 2.01 of the PSA states, in relevant part, the following:

> [OOMAC] . . . does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the [trustors] all the right, title and interest of [OOMAC], including any security interest therein for the benefit of [OOMAC], in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule, including the related Cut-Off Date and all collections in respect of interest and principal due after the Cut-Off Date; (ii) property which secured each such Mortgage Loan and which has been acquired by foreclosure or deed in lieu of foreclosure; (iii) its interest in any insurance policies in respect of the Mortgage Loans; (iv) the rights of [OOMAC] under the Mortgage Loan Purchase Agreement; (v) all other assets included or to be included in the Trust Fund; . . . and (vii) all proceeds of any of the foregoing. Such assignment includes all interest and principal due and collected by [OOMAC] or [OOMC] after the Cut-off date with respect to the Mortgage Loans. Joint Exhibit 6, p. 28.

{¶12} After discussing the PSA, Kistler stated the following regarding the physical possession of the Note:

> Q: After the loan is deposited into the trust, what happens to physical possession of the original note?
>
> A: Physical possession of the original note is transferred either from the company, the originator's warehouse bank custodian to the trust custodian, or if those are the same, in the same companies, then the file is physically moved off of the originator warehouse's bank line shelf on to a shelf that is designated specifically for this trust.
>
> Q: And that is what happened in this case?

A:    That's what happened in this case, yes.  Trial Tr., p. 40-41.

While Kistler could not state the exact date on which the trust custodian received physical custody of the Note, he said that if the Note was not in the trust custodian's physical custody, there would be a business record to that effect. Since no such business record existed, Kistler said that the custodian would have certainly received physical custody of the Note by May 30, 2007, and that the allonge would have been with the collateral file at that time.

{¶13} Regarding the Assignment, Kistler testified that the purpose of a mortgage assignment is "to put the world on notice as to who has the authority to enforce the terms of the note and mortgage." *Id.* at 43.  The Assignment purportedly transferred the interest of AHMSI, "as successor-in-interest to Option One Mortgage Corporation" to Trustee.  Joint Exhibit 3.  It was executed on March 12, 2009, but it identified February 27, 2009 as the Assignment's effective date.  Kistler indicated that AHMSI never owned the Note.  He also admitted that the signatures on the Assignment, although the same name, were different from the signatures on another unrelated mortgage assignment.  Further, Kistler stated that the Assignment was immaterial because Trustee has the authority to enforce the Note and Mortgage due to the PSA.

{¶14} On cross examination, Kistler recalled that in his deposition he stated that he became familiar with the collateral file in the two previous weeks and that

he did not have personal knowledge of the collateral file's location or condition in 2007, 2009, or 2010. He also testified that he did not have personal knowledge that the allonge was affixed to the Note in 2007. Further, there was a letter from AHMSI to the Freeds dated June 3, 2010, stating that AHMSI was "unable to provide the date when Option One Mortgage Loan Trust took over the loan." Defendants' Exhibit 1.

{¶15} James Brantley, a Senior Foreclosure Mediation Specialist with AHMSI, testified regarding the amount due on the Freeds' loan. He testified that the Freeds' loan was in default, with the first missed payment occurring in December 2008. No subsequent payments were made. He indicated that the total outstanding balance due on the Note was $389,378.42.

{¶16} The Freeds challenged the outstanding balance because the principal balance purportedly included an erroneous $2,900.00 prepayment penalty from the payoff of the Freeds' previous loan. The following evidence was admitted regarding the inclusion of this amount in the principal balance. OOMC was the originator of the Freeds' loan, which resulted from the refinancing of a previous loan that was also held by OOMC. OOMC added a $2,900.00 prepayment penalty for this refinancing since it paid off the previous loan. However, OOMC's policy was to waive this fee in such situations. As a result, Sand Canyon Corporation ("Sand Canyon"), which took over OOMC's origination business, offered a

$2,900.00 reimbursement to the Freeds in a letter dated March 11, 2009. Meanwhile, at trial, Trustee read into the record the following portion of Terry Freed's deposition regarding the prepayment penalty:

> [At closing,] I said that [the $2,900.00 penalty] shouldn't be on there, and I said there is also some charges here, and a good faith estimate, that were not to be charged on what you told me would be charged. There were some extra brokerage fees and things like that, and I said, you can't do this. And they said, well, we'll take them off. We won't take the [$]2900 off, but they took the brokerage fees off . . . . Trial Tr., p. 119.

**{¶17}** In December 2011, the trial court entered judgment against the Freeds in the foreclosure action. The trial court found that Trustee was either a holder or a nonholder in possession with the rights of a holder, that the Note and Mortgage were transferred to Trustee through the PSA, that the allonge was affixed to the Note, and that the Note was transferred to Trustee by OOMC, a holder. It also found that as of November 1, 2008, the Freeds were in default on the Note. Consequently, the trial court awarded judgment to Trustee in the amount of $389,378.42.[5]

**{¶18}** It is from this judgment that the Freeds appeal, presenting the following assignments of error for review.

---

[5] This amount includes an unpaid principal balance of $306,711.34, delinquent interest of $59,972.46, escrow advances for real estate taxes of $9,087.06, late charges of $1,823.01, and recoverable corporate advances of $11,784.55.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN ENTERING A DECREE IN FORECLOSURE BASED UPON FINDINGS THAT APPELLEE HAD STANDING TO FORECLOSE BECAUSE AT A MINIMUM, A FORECLOSURE PLAINTIFF MUST DEMONSTRATE NEGOTIATION OF THE NOTE AND/OR ASSIGNMENT OF RECORD OF THE MORTGAGE.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN ENTERING A DECREE IN FORECLOSURE WHERE APPELLEE FAILED TO PROVIDE COMPETENT EVIDENCE THAT IT IS A NONHOLDER IN POSSESSION WITH THE RIGHTS OF A HOLDER, AND THERE IS NO EVIDENCE OF PROPER TRANSFER BY A HOLDER FOR THE PURPOSE OF GIVING APPELLEE THE RIGHT TO ENFORCE THE NOTE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN ENFORCING THE AMOUNT APPELLEE ASSERTED AS DUE AND PAYABLE UNDER THE NOTE AS OF NOVEMBER 3, 2011.**

{¶19} Due to the nature of the first and second assignments of error, we elect to address them together.

*Assignments of Error Nos. I & II*

{¶20} In their first and second assignments of error, the Freeds challenge Trustee's standing to prosecute this foreclosure action. Essentially, the Freeds base their contention on the following: (1) that Trustee is not the real party interest because it failed to show that it is either a holder or a nonholder in possession with

the rights of a holder; (2) that Trustee does not have physical possession of the loan documents; and (3) that the loan documents feature various defects that render them invalid. We agree in part and disagree in part, but find no reversible error in the trial court's judgment.

*Standing in Foreclosure Actions*

{¶21} "Standing is a threshold question for the court to decide in order for it to proceed to adjudicate the action." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77 (1998). Standing here is intertwined with Civ.R. 17(A)'s requirement that every action "be prosecuted in the name of the real party in interest." Civ.R. 17(A); *see also First Union Natl. Bank v. Hufford*, 146 Ohio App.3d 673, 677 (3d Dist. 2001) ("A party who has failed to establish itself as a real party in interest lacks standing to invoke the jurisdiction of the court and is not entitled to judgment as a matter of law."). To decide whether this requirement is satisfied, "courts must look to the substantive law creating the right being sued upon to see if the action has been initiated by the party possessing the substantive right to relief." *Shealey v. Campbell*, 20 Ohio St.3d 23, 25 (1985). We apply *de novo* review to a trial court's finding that standing exists. *Portage Cty. Bd. Of Commrs. v. City of Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, ¶ 90; *see also League of Latin Am. Citizens v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 26 (surveying Ohio courts' treatment of standing issues as questions of law subject to

*de novo* review). "When determining a question of law *de novo*, this [c]ourt may substitute, without deference, its judgment for that of the trial court." *Groll Furniture Co. v. Epps*, 3d Dist. No. 9-09-13, 2009-Ohio-3533, ¶ 9.

*Holder Analysis*

**{¶22}** Generally, in foreclosure actions, the real party in interest is the current holder of the note and the mortgage. *Wells Fargo Bank, N.A. v. Sessley*, 10th Dist. No. 09AP-178, 2010-Ohio-2902, ¶ 11. "Promissory notes are negotiable and may be transferred to someone other than the issuer." *HSBC Bank USA v. Thompson*, 2d Dist. No. 23761, 2010-Ohio-4158, ¶ 45. After negotiation, an entity is a holder "[i]f the instrument is payable to an identified person [and] the identified person [is] in possession of the instrument." R.C. 1301.01(T)(1)(b), repealed in Am.H.B. No. 9, 2011 Ohio Laws.[6]

**{¶23}** Trustee has brought this action as "Trustee" of the Mortgage and the Note. A trust is a fiduciary relationship whereby one party retains a property interest for the benefit of another. *See, e.g.*, *Hill v. Irons*, 160 Ohio St. 21, 26 (1953). "Because a trustee is both a representative and an individual, 'the capacity [in which the trustee sues] must be clear and the distinction between the two different capacities must be maintained.'" *UAP Columbus JV 326132 v. Young*,

---

[6] House Bill No. 9 ("H.B. 9"), effective June 29, 2011, repealed R.C. 1301.01. H.B. 9 "amended the provisions of R.C. 1301.01 and renumbered the section so that it now appears at 1301.201." *Flagstar Bank, F.S.B. v. Richison*, 3d Dist. No. 14-12-01, 2012-Ohio-3198, fn. 1. This matter implicates transactions predating H.B. 9's effective date so we apply former R.C. 1301.01 here. *Id.* However, "[w]e note that the R.C. 1301.201(B)(21)(a) definition of 'holder' is substantially similar to the R.C. 1301.01(T)(1)(a), (b) definition of holder." *Id.*

-12-

10th Dist. No. 11AP-926, 2012-Ohio-2471, ¶ 16, quoting *MacAlpin v. Van Voorhis*, 11th Dist. No. 8-176 (Sept. 28, 1981).

**{¶24}** Here, Trustee did not make its trust designation clear. OOMC did negotiate and transfer the Note via an indorsement on the allonge. But, the allonge identifies the transferee as "Wells Fargo Bank, N.A.," which is an entirely different entity than "Wells Fargo, N.A., as Trustee for Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007-6." As a result, Trustee is not the named payee of the Note, rendering Trustee incapable of being the holder of the Note and Mortgage.

**{¶25}** We also note that the allonge was not properly affixed to the Note in this matter. The record reflects that the allonge was merely attached to the file folder and not to the Note itself. Indeed, Kistler admitted that he had no personal knowledge as to whether the allonge was properly affixed to the Note. Under Ohio's version of the UCC, the allonge's lack of attachment to the Note is a fatal defect as it relates to Trustee's holder status. *See Thompson*, 2010-Ohio-4158, at ¶ 66 ("[T]he [allonge] must be affixed to the instrument in order for the signatures to be considered part of the instrument.").

**{¶26}** Moreover, Trustee cannot rely on the Assignment as a proper basis to establish holder status. It is axiomatic that an assignor may only transfer the rights which it holds. *See, e.g.*, *Union Bank Co. v. North Carolina Furniture Express,*

*L.L.C.,* 189 Ohio App.3d 538, 2010-Ohio-4176, ¶ 15 (3d Dist.) ("[T]he assignor can give only the interest currently held by the assignor."). AHMSI, the purported assignor here, is merely the servicer of the Freeds' loan. As Kistler admitted on cross-examination, AHMSI has never owned the Freeds' loan. Further, AHMSI did not present any evidence to show it actually was the successor-in-interest to OOMC. Even if there was such evidence, the record reflects that two years before the Assignment's execution, OOMC had transferred the Note to OOMAC, meaning that OOMC had no ownership interest in the Freeds' loan at the time of the Assignment's execution. As such, AHMSI, as OOMC's purported successor, could not transfer ownership rights to Trustee via the Assignment.

{¶27} Due to the allonge's failure to identify Trustee, its lack of proper attachment to the Note, and the Assignment's deficiencies, it was erroneous for the trial court to find that Trustee had standing to bring this action as a holder.

*Nonholder in Possession with Rights of a Holder Analysis*

{¶28} However, Trustee's inability to show holder status does not necessarily defeat its claim of standing to enforce this action. Under Ohio law, nonholders in possession with the rights of holders also have standing to bring foreclosure actions. *See, e.g.*, *Mtge. Electronic Registration Sys., Inc. v. Vasick*, 6th Dist. No. L-09-1129, 2010-Ohio-4707, ¶ 33. A nonholder in possession has the rights of a holder where the transferee delivered the instrument for the purpose

of vesting the right to enforce it in the recipient. *See* R.C. 1303.22(A) and 1303.31. As such, nonholder in possession with rights of a holder status exists where the evidence shows that the transferee of the instrument intended to hand over the right to enforce the instrument.

{¶29} The evidence in the record reflects that such intent existed here. The central document in this matter is the PSA. The PSA governs a trust in which OOMAC deposited a large number of loans. After acquiring the Note from OOMC, as evidenced in the Agreement, OOMAC then deposited the Note into the trust, which subjected it to the PSA's terms. The PSA explicitly transfers all rights to the deposited notes to Trustee: "[OOMAC] . . . does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the [trustors] *all the right, title and interest* of [OOMAC], *including any security interest* therein for the benefit of [OOMAC]." (Emphasis added.) Joint Exhibit 6, p. 28. This broad assignment manifestly shows an intent that Trustee have the ability to enforce the loans deposited in the Trust, including the Note.

{¶30} In light of this evidence, the trial court's judgment that Trustee was a nonholder in possession with the rights of a holder is not erroneous.

{¶31} The Freeds question the existence of intent by pointing out defects in the documents relating to their loan, including the allonge, the Assignment, and the POA. While these defects are glaring, they do not defeat the import of these

-15-

documents as it relates to the parties' intent that Trustee have the authority to enforce the Note and the Mortgage. Consequently, the defects in the documents do not preclude a finding that Trustee is a nonholder in possession with the rights of a holder.

*Possession of the Note and Mortgage*

**{¶32}** The Freeds also question the trial court's finding that Trustee has physical possession of the original loan documents. In foreclosure bench trials, a trial court's factual findings are entitled to deference and are only disturbed upon a showing that the findings are against the manifest weight of the evidence. *See, e.g.*, *Bradford v. B&P Wrecking Co.*, 171 Ohio App.3d 616, 2007-Ohio-1732, ¶ 25 (6th Dist.). Further, "[i]t is beyond well-established that appellate courts must generally refrain from second-guessing trial court decisions regarding credibility." *Powell v. Vanlandingham*, 4th Dist. No. 10CA24, 2011-Ohio-3208, ¶ 36; *see also Bradford* at ¶ 65 (rejecting appeal of foreclosure decree partly based on argument that trial witness was not credible).

**{¶33}** Our review of the record shows that there is sufficient evidence to support the trial court's finding in this regard. Kistler testified that Trustee receives physical possession of original loan documents, like those involving the Freeds' loan, as a matter of routine practice upon the closing of a transaction. He also indicated that if the Freeds' loan documents were not transferred to the trust

custodian, there would have been a business record to that effect. In light of our deferential review, we decline to second-guess the trial court's weighing of the Kistler's credibility and find that the trial court's judgment was not erroneous in this regard.

{¶34} In sum, although the trial court erroneously concluded that Trustee is the holder of the Note and Mortgage, we find that such error was not prejudicial because the record shows that Trustee was a nonholder in possession with the rights of a holder. Consequently, Trustee is the real party in interest and was able to bring this action. Further, we find that the alleged defects in the Freeds' loan documents are immaterial and do not effect Trustee's status as a nonholder in possession with the rights of a holder.

{¶35} Accordingly, we overrule the Freeds' first and second assignments of error.

*Assignment of Error No. III*

{¶36} In their third assignment of error, the Freeds argue that the trial court erred in enforcing the amount of $389,378.42 that was purportedly due and payable under the Note. The basis for the Freeds' contention is that $2,900.00 was erroneously charged at closing as a prepayment penalty and that the inclusion of this amount in the principal balance has rendered the amount of interest charged incorrect. We disagree.

**{¶37}** Ohio courts treat promissory notes as contracts, meaning that the precepts of contract law govern their interpretation. *See, e.g.*, *Edward A. Kemmler Mem. Found. v. 691/733 East Dublin-Granville Rd. Co.*, 62 Ohio St.3d 494, 499 (1992). "The fundamental purpose of contract interpretation is to determine and carry out the intention of the parties, and the intention of the parties is presumed to lie in the language used [in the instrument]." *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711, ¶ 14 (3d Dist.). The terms of the instrument must "be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraphs one and two of the syllabus, superseded by statute on other grounds as stated in *Great Invest. Properties, L.L.C. v. Bentley*, 3d Dist. No. 9-09-36, 2010-Ohio-981, ¶ 13. Further, "'[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'" *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.2d 321, 322 (1984).

**{¶38}** Here, the record reveals that the Freeds signed the Note after Terry Freed inquired as to the $2,900.00 penalty's inclusion in the principal balance. The lender's representative indicated that the penalty was included and that it

could not be removed. After learning this, the Freeds signed the Note knowing that the balance included the penalty.

{¶39} There is evidence indicating that OOMC's successor, Sand Canyon, admitted that the penalty should not have been included in the Note balance. However, Sand Canyon made this admission in 2011, nearly two years after the PSA was executed and the loan was transferred to Trustee. Further, Sand Canyon offered a reimbursement of the penalty to resolve the Freeds' complaint.[7] This evidence discloses that the Freeds' quarrel over the inclusion of the penalty and the resulting effect on the amount due and owing on their loan is not with Trustee but rather with Sand Canyon.

{¶40} More importantly, this evidence does not overcome the Freeds' action of signing the Note with full knowledge that it included the $2,900.00 penalty in the principal balance. In light of this, the Freeds cannot now seek to undo the contract that they willingly entered. Thus, we find that the trial court did not err when it ordered the Freeds to pay the full amount due on the Note, including the $2,900.00 penalty.

{¶41} Accordingly, we overrule the Freeds' third assignment of error.

---

[7] There is no evidence in the record whether the Freeds have accepted the reimbursement offer. However, the Freeds' trial counsel indicated that they had not accepted the offer.

{¶42} Having found no prejudicial error herein, in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**