CUYAHOGA METROPOLITAN HOUSING AUTHORITY, Appellant,

v.

YOUNGER, Appellee.

[Cite as *Cuyahoga Metro. Hous. Auth. v. Younger* (1994), 93 Ohio App.3d 819.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65302.

Decided April 28, 1994.

*Mark Witt*, for appellant.

*Legal Aid Society, Edward Gregory* and *Peter M. Iskin*, for appellee.

HARPER, Judge.

Plaintiff-appellant, the Cuyahoga Metropolitan Housing Authority ("CMHA"), appeals from the dismissal of its forcible entry and detainer action instituted against defendant-appellee, Devonia Younger. CMHA challenges the dismissal which was based on its failure to comply with federal notice requirements, specifically Section 966.4($l$)(3)(ii), Title 24, C.F.R. A careful review of the record compels affirmance.

Younger executed a lease on April 16, 1992 for a dwelling unit located at 17801 Parkmount, Cleveland, Ohio. The dwelling unit is part of CMHA's Riverside Park Estates, which it owns and manages pursuant to the federal Public Housing Program. See Part 966, Title 24, C.F.R.

CMHA, through its manager, issued a "Notice of Termination and Invitation to Explain" to Younger on September 4, 1992. This notice advised Younger that: (1) CMHA possessed information concerning violations of her lease; (2) CMHA would refuse to accept rent payments pending the eviction action, but she was still responsible for past due rent; (3) her lease would be terminated thirty days

after the notice, and eviction proceedings would commence unless the matter was resolved; and (4) she had an opportunity to personally reply to the notice on September 9, 1992 or to make other arrangements.

One of the attachments to the notice contained the following alleged lease violations:

"On or about August 18, 1992, you were issued a Lease Violation Notice from the Management Office for Unauthorized Occupants in your Unit, and for disturbance coming from you [*sic*] unauthorized occupants as well as possible illegal activities in your residence of 17801 Parkmount Avenue, Cleveland, Ohio 44135 Cuyahoga County.

"On or about August 11, 1992, you were issued a Lease Violation Notice from the Management Office for Unauthorized Occupants in your unit, and for Disturbance of neighbors. Management received several calls of complaints about your guests.

"On or about July 28, 1992, you were issued a Lease Violation Notice from the Management Office for Disturbance of Neighbors, Unauthorized Occupants and possible illegal activities coming from your unit.

"On June 3, 1992, you were issued a Lease Violation Notice from the Management Office for Disturbance of your neighbor[s'] peaceful enjoyment.

"On or about January 15, 1992, a Judgment Entry was signed in Housing Court case No. # [*sic*] 91–CVG–31651 stating that, you would remove Unauthorized persons from your unit.

"These incident(s) constitute a violation of your Dwelling Lease, Article 9, Sections A, B, D, N O [*sic*] and P which reads [*sic*] as follows:

"(A) Not to provide accommodations for boarders or lodgers.

"(B) Not to assign the lease or to sublease the premises.

"(D) To use the premises solely as a private dwelling for Resident and Resident's household, as identified in accordance with the provisions of Section 1, and not to use or permit its use for any other purpose.

"(N) To conduct himself/herself, and cause other persons who are on the premises with the consent of Resident or members of his/her household to conduct themselves, in a manner which will not disturb his/her neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining the estate in a decent, safe and sanitary condition.

"(O) To refrain from illegal or other activity which impairs the physical or social environment of the estate.

"(P) In addition to the foregoing Subsections A through O, Resident and members of his/her household, or a guest or other persons under the Resident's control, shall not engage in criminal activity including, but not limited to, drug-related activity on or near public housing premises, while Resident resides in public housing and such criminal activity shall be cause for termination of tenancy. * * *

"Because of this violation(s), CMHA is exercising its right to refuse rent payments from you pending this eviction action as provided for in Article 3, Section D of your dwelling lease. This puts you in violation of Section 3, Section B of your dwelling lease for nonpayment of rent. * * * "

After the scheduled conference of September 9, 1992 with CMHA management, Younger was served on October 5, 1992 with a three-day notice to vacate the premises. Younger did not vacate the premises, leading to the filing of CMHA's complaint in forcible entry and detainer.

The complaint contained all of the information set forth in the attachment to the September 4, 1992 "Notice of Termination and Invitation to Explain." It also presented two causes of action, one for unlawful possession of the premises, and the other for unpaid rent.

Younger filed a motion to dismiss and/or for summary judgment on December 18, 1992. She premised the motion on CMHA's alleged failure to afford her due process by identifying specific instances of conduct which caused the termination of her lease. CMHA's failure to supply this information, according to Younger, was a violation of Section 966.4($l$)(3)(ii), Title 24, C.F.R.

The trial court issued its judgment on February 24, 1992 granting Younger's motion to dismiss. The court initially recognized that the purported grounds for termination were located in the September 4, 1992 notice of termination as set forth *supra*. It then concluded:

"[T]he above grounds are not 'specific grounds' in that they do not refer to the dates of claimed violations, descriptions of specific events that are claimed violations, and the names of the individuals involved in the claimed violations (at least in as far as plaintiff can determine the names).

"Thus the required notice of lease termination fails. Plaintiff's service of Ohio Revised Code 1923.04 Notice to Vacate prior to expiration of tenancy is improper service, and thus this court lacks jurisdiction over this action. Defendant's motion to dismiss is granted."

This appeal followed with CMHA claiming as error [1]:

"I.   The trial court erred when it granted the defendant's motion to dismiss and/or for summary judgment, because the tenant failed to exhaust administrative remedies.

"II.   The trial court erred when it ruled that the notice of termination did not identify 'specific grounds' sufficient to satisfy due process requirements to allow the defendant to prepare a defense.   The notice of termination answers each of the six general interrogatories who, what, where, when, why and how.

"III.   The trial court's ruling is in error as impermissible judicial activism.

"IV.   The trial court committed prejudicial error when it granted the motion to dismiss."

In its first assignment of error, CMHA charges that Younger should have either (1) attended the informal meeting with management; (2) filed a grievance under Section 966.4(*l*)(3)(iv), Title 24, C.F.R.; or (3) requested to examine relevant documents pursuant to Section 966.4(m), Title 24, C.F.R.   CMHA argues, therefore, that Younger was not entitled to have the complaint dismissed based upon insufficient notice because she did not use the administrative process to challenge the insufficiency.

CMHA's suggestion that the trial court herein acted improperly because "the Code of Federal Regulations, which governs eviction actions, and administrative law generally, are designed to weed out cases which can be resolved outside the trial court setting" is a curious one.   Furthermore, CMHA finds fault with the trial court's placing "itself as the only arbiter of justice" because "then there is really no purpose to alternative dispute resolutions and the already over-burdened caseload of the Court system will only increase."   This court is thus perplexed by appellant's first assignment of error, since it was CMHA which filed the forcible entry and detainer action, and it was CMHA which asked the trial court to be the "arbiter of justice."

Assuming *arguendo* there is any merit in CMHA's contention, this court is without authority to review this assignment of error.   First, the record is silent as to how Younger reacted to the September 4, 1992 notice of termination; we do not know if she attended any meetings with CMHA management.   Second, CMHA did not file a response to Younger's motion to dismiss and/or for summary judgment, and, consequently, did not submit an argument in the trial court

---

1.   Even though the trial court did not rule on CMHA's claim that Younger was liable for unpaid rent, this court has jurisdiction to review this appeal.   See *Cuyahoga Metro. Hous. Auth. v. Jackson* (1981), 67 Ohio St.2d 129, 21 O.O.3d 81, 423 N.E.2d 177; *Skillman v. Browne* (1990), 68 Ohio App.3d 615, 589 N.E.2d 407.

relating to Younger's failure to exhaust administrative remedies. Errors not brought to the attention of the trial court are waived for purposes of appeal when the error could have been avoided or corrected by the court. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298.

CMHA's first assignment of error is overruled.

■ For its second assignment of error, CMHA submits that the trial court erred in concluding that the notice of termination failed to contain specific instances of conduct which adequately notified Younger of the cause for termination of her lease. CMHA counters the trial court's conclusion by arguing that the notice did advise Younger of when the alleged violations occurred and the alleged violations themselves. However, CMHA maintains that to identify who was involved in the alleged violations would cause an undue financial burden on CMHA, its tenants and taxpayers in general.

CMHA partially relies on the trial court's entry in case No. 91–CVG–31651 in support of its argument that the notice of termination impliedly informed Younger of all of the information necessary to prepare a defense. In other words, this entry in combination with the September 4, 1992 notice of termination, according to CMHA, met the requirements set out in Section 966.-4(*l*)(3)(ii), Title 24, C.F.R. The entry reads as follows in pertinent part:

" * * *

"(1) Defendant [Younger] consents to Judgment in Plaintiff's favor on the first cause of action;

"(2) Plaintiff [CMHA] agrees not to execute on the judgment if defendant:

"(a) Removes and keeps Jason Hale off of CMHA premises;

"(b) Calls CMHA or CPD police to report that Jason Hale is on the premises and criminally trespassing if defendant/tenant sees Jason Hale on CMHA premises; and,

"(c) Visits with Jason Hale should be conducted off CMHA premises."

CMHA acts as a public housing authority ("PHA") that administers the Public Housing Program. CMHA must, therefore, comply with two sets of regulations when it commences a forcible entry and detainer action: the state law encompassed in R.C. 1923.04 and the federal requirements enunciated in Sections 866.4(k) and (*l*), Title 24, C.F.R.

■ A PHA is required to give a tenant written notice of any proposed termination of the tenant's lease. Section 966.4(*l*)(2), Title 24, C.F.R. Section 966.4(*l*)(3)(ii), Title 24, C.F.R. provides in relevant part, "[t]he notice of lease

termination to the tenant shall state *specific grounds* for termination, and shall inform the tenant of the tenant's right to make such reply as the tenant may wish. * * *" (Emphasis added.) A PHA is required to set forth the specific grounds for termination in the notice "to insure that the tenant is adequately informed of the nature of the evidence against him [or her] so that he [or she] can effectively rebut that evidence." *Escalera v. New York City Hous. Auth.* (C.A.2, 1970), 425 F.2d 853, 862; see, also, *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Billington v. Underwood* (C.A.5, 1980), 613 F.2d 91.

Termination notices have been found to be insufficient where they contain only one sentence, are framed in vague and conclusory language, or fail to set forth a factual statement to justify termination. For example, in *Assoc. Estates Corp. v. Bartell* (1985), 24 Ohio App.3d 6, 24 OBR 28, 492 N.E.2d 841, this court found the following language to be insufficient to notify the tenant of the specific grounds for termination of her lease: "[s]erious, repeated damage to unit. Repeated disturbance." *Id.* at 10, 24 OBR at 32, 492 N.E.2d at 846. We characterized the notice as "blanketed in broad language" and concluded that it did not afford the tenant due process as required by the federal regulations. *Id.*

Similarly, in *Hous. Auth. of DeKalb Cty. v. Pyrtle* (1983), 167 Ga.App. 181, 306 S.E.2d 9, the court determined the notice was deficient because it did not "provide the tenant with knowledge of the circumstances upon which the termination of the lease was predicated sufficient to afford the tenant an opportunity to prepare a meaningful rebuttal." *Id.* at 183, 306 S.E.2d at 10–11. The termination notice stated the following reason for termination:

" ' * * * Repeated incidents of intoxication and irresponsible use of the kitchen facilities in your Unit [which] have imposed a threat [to] the peaceful enjoyment and safety of your neighbors. * * *' " *Id.*

Even when a notice of termination specifies the individual involved in alleged wrongdoing which purportedly calls for the termination, the notice was found insufficient. Thus, in *Escalera,* the following notification failed to adequately apprise the tenants of the reasons for the termination:

" * * * 'Record of antisocial activities and arrests of your son, Fred, Jr., constituting a threat to the peace and safety of the community * * *' " and " ' * * * Illegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants.' " *Escalera, supra,* 425 F.2d at 858, fn. 2.

A review of the notice sent to Younger in the instant case fails to comply with the requirements of Section 966.4(*l* )(3)(ii), Title 24, C.F.R., as it "failed to set forth a factual statement of the incident or incidents which constituted the grievance." *Hous. Auth. of King Cty. v. Saylors* (1978), 19 Wash.App. 871, 874, 578 P.2d 76, 79. The notice contains vague and broad allegations that unautho-

rized persons were in Younger's unit and that her neighbors were disturbed by activities therein. Moreover, the notice was even more so deficient because it contained an allegation that there were "possible" illegal activities occurring within the unit. If CMHA did not have any concrete facts to support this allegation, there would be no easy way for Younger to refute it. Additionally, the fact that CMHA included a statement that the incidents constituted a violation of Younger's lease, this statement did not make the notice sufficient. See *Hous. Auth. of King Cty.* (notice insufficient where termination predicated upon "violation of your lease in section 6j: The Tenant shall not commit or maintain a nuisance on or about the premises."). The notice was also insufficient, since it failed to notify Younger of the dates of the incidents. The fact that CMHA referenced the dates that the Lease Violation Notices were issued to Younger does not alter this insufficiency; neither this court nor the trial court could assume that the violation notices were issued to Younger on the date of the alleged incidents. Moreover, the notices failed to identify the individuals involved in the alleged incidents. Absent any of these details, the notice of termination forwarded to Younger fails as a notice to terminate her tenancy, and the trial court correctly identified this failure.

CMHA's response that the trial court and Younger knew full well what activities caused it to issue the notice of termination and, therefore, Younger was not precluded from adequately responding to the termination process does little to persuade this court that it complied with the federal regulations. CMHA would not be hard pressed to prepare a notice of termination which includes a brief *factual* statement beyond allegations of "disturbance," "possible illegal activities," and "complaints about your guests." It had in its possession all of the information necessary to prepare such a factual statement, as we assume it retains copies of the Lease Violation Notices themselves.

CMHA's second assignment of error is overruled.

■ CMHA, in its third assignment of error, accuses the trial court of judicial activism. Specifically, it proposes that the trial court's action stretches the bounds of reasonableness and turns forcible entry and detainer actions into "complicated, technical process[es] that a landlord cannot possibly satisfy."

This court reminds CMHA that if it only had complied with Section 966.-4(*l*)(3)(ii), Title 24, C.F.R., it would not be in the position it finds itself in at the moment. Moreover, the federal regulation is technical in nature, and all PHAs must comply with the regulation. The trial court herein reviewed whether CMHA complied with the regulation, and properly found, as we do, that there was no compliance. We also surmised *supra*, that CMHA was in full possession of enough information to formulate a factual statement to include in the notice. CMHA's accusation that the trial court engaged in "impermissible judicial

activism" is an accusation without merit, an insult to the judicial process, and one which is repugnant to this court.

CMHA's third assignment of error is overruled.

CMHA's fourth assignment of error in which it submits that the trial court erred in granting summary judgment in favor of Younger is without factual support. Younger's motion was structured as a "motion to dismiss and/or for summary judgment." The trial court expressly stated that it was granting the "motion to dismiss" for failure to comply with the federal regulation.

CMHA's fourth assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, P.J., and BLACKMON, J., concur.