DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Sylvania Municipal Court which rendered judgment in favor of appellee, Lucas Metropolitan Housing Authority ("LMHA"), in this forcible entry and detainer action. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant, Margaret Carmony, sets forth the following two assignments of error:
"ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT/APPELLANT BY GRANTING A JUDGMENT TO PLAINTIFF/APPELLEE FOR A WRIT OF RESTITUTION WHERE THE PLAINTIFF/APELLEE BY ITS ACTIONS HAD WAIVED ITS RIGHT TO EVICT THE DEFENDANT/APPELLANT.
 "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT EQUITABLE RELIEF TO PREVENT THE FORFEITURE OF DEFENDANT/APPELLANT'S LEASEHOLD INTEREST."
The following facts are relevant to this appeal. LMHA served appellant with a notice of termination of lease on or about May 15, 2000, and a three day notice on June 19, 2000. On June 30, 2000, LMHA filed a forcible entry and detainer action against appellant in which LMHA sought possession of the federally subsidized housing leased to appellant by LMHA. LMHA averred a violation of the terms of appellant's lease[1] as the result of the seizure of illegal drugs from her premises by the Lucas County Sheriff's department on August 31, 1997. The drugs belonged to appellant's guest. A bench trial was held on August 4, 2000. The following witnesses testified at trial: two LMHA employees, three police officers involved in the drug raid at appellant's residence, a police forensic laboratory technician who analyzed the drugs recovered from appellant's residence, and appellant.
The housing manager for the LMHA complex in which appellant resided testified as to the service of the notice of termination of lease and the three day notice. The housing manager also testified that although appellant was recertified in 1998 and 1999, appellant was not recertified in 2000. The housing manager testified that although she knew that a drug raid had occurred at appellant's residence shortly after it occurred, she was unable to obtain a police report as documentation to process the eviction until March 2000. The housing manager also testified that no rent was accepted from appellant after the thirty day termination notice was served upon her in May 2000. The director of property management for LMHA testified that the police withheld police reports on the drug raid at appellant's residence despite her trying every month to obtain them. She testified that she finally obtained the police reports in March 2000.
The lead police officer involved in the drug raid at appellant's residence testified that the following drugs were found in appellant's residence:
1. five bundles[2] of marijuana found in the kitchen;
2. seven bundles of marijuana found in the garage;
 3. two large baggies of cocaine found in the kitchen freezer; and
 4. three baggies of crack cocaine found in the kitchen freezer.
This officer testified that the individual arrested as a result of the drug raid was the father of appellant's children. This officer also testified that he asked LMHA to delay any eviction of appellant because she was willing to cooperate and testify against this individual.
The police forensic laboratory technician who analyzed the drugs recovered from appellant's residence testified that as a result of his tests he determined that 119.85 grams of crack cocaine, 2,962.38 grams of marijuana and a total of 1981.16 grams of cocaine were seized from appellant's residence.
Appellant testified that she had lived in the LMHA residence for seven years. She also testified that she continued to pay rent until it was refused in April 2000. She testified that she was recertified. On cross-examination, although initially appellant denied knowing that the father of her children had drugs in her residence, she did admit that she knew he had some drugs in her residence.
Both parties submitted post-trial briefs. On September 21, 2000, the trial court entered its judgment in favor of LMHA. On September 29, 2000, appellant filed a timely notice of appeal and a motion to stay execution of the judgment. On October 4, 2000, the trial court granted appellant's motion to stay proceedings.
In her first assignment of error, appellant argues that the trial court erred in granting judgment to LMHA because LMHA by its actions had waived its right to evict appellant. Specifically, appellant argues that LMHA waived its right to evict 1) because LMHA failed to take any action to evict for three years; 2) because LMHA continued to accept appellant's rent payments from September 1997, through March 2000, and recertified appellant, i.e. re-established who was in the household and how much rent appellant should pay; and 3) because LMHA executed a new lease on September 11, 1997. This court finds no merit in this assignment of error.
Appellant's first argument is that LMHA waived its right to evict because LMHA failed to take any action to evict for three years. LMHA argues that the delay in seeking eviction was caused by the delay in the police providing the documentation from the drug raid on appellant's residence.[3] LMHA also argues that the police requested that LMHA delay seeking appellant's eviction so that appellant would cooperate with the police and testify at the trial. Section 16 of appellant's lease with LMHA provides:
 "No delay or failure by LMHA in exercising any right under this Lease agreement, and no partial or single exercise of such right, shall constitute a waiver (post or prospective) of that or any other right unless expressly provided herein."
The trial court found, and this court agrees, that this clause constituted an agreement between the parties that any delay in action by LMHA would not constitute a waiver.
Appellant's next argument is that LMHA waived its right to evict because LMHA acted inconsistently after knowledge of appellant's breach of the terms of the lease. Specifically, appellant argues that LMHA continued to accept appellant's rent payments through March 2000, and recertified appellant. This argument fails, however, because LMHA did no act inconsistent with the thirty day notice after it was served. See,Vistula Mgt. Co. v. Newson (1997), 120 Ohio App.3d 500, 504 ("Actions by a landlord which are inconsistent with a service of notice to vacate result in a waiver of that notice.")
Appellant's argument that LMHA waived its right to evict because LMHA executed a new lease on September 11, 1997, is flawed because appellant failed to raise this argument in the trial court. It is not necessary for this court to consider the merits of appellant's argument as appellant failed to raise this argument in the trial court. It is well settled that an appellate court will not consider questions not presented, considered or decided by a lower court. In re Dismissal of Mitchell (1979),60 Ohio St.2d 85, 90; Kalish v. Trans World Airlines (1977),50 Ohio St.2d 73, syllabus.
Upon consideration of the above facts and law, this court concludes that the trial court did not err in granting judgment to LMHA.
Accordingly, appellant's first assignment of error is found not well-taken.
In her second assignment of error, appellant argues that the trial court erred in failing to grant equitable relief to prevent the forfeiture of appellant's leasehold interest. This court finds no merit in this assignment of error.
In support of this assignment of error, appellant cites Gorsuch Homes,Inc. v. Wooten (1992), 73 Ohio App.3d 426. In Gorsuch, the tenant's son painted graffiti on brick walls and the side of a building in the subsidized apartment complex in which the tenant resided. The trial court granted a writ of restitution to the landlord based upon non-payment of the fees for this damage. In reversing, the appellate court stated:
 "* * * Generally, courts, in balancing the equities, will relieve a tenant from the harsh consequences of a forfeiture where the payment of money damages will adequately compensate the landlord. That is true even where the forfeiture is requested because of damages done by a tenant's children. (Citation omitted.)" Id. at 436.
In the cases relied upon by the Gorsuch court for the proposition that Ohio courts have the power to relieve a tenant from the consequences of forfeiture of a leasehold interest, forfeiture had been sought, as had it been in Gorsuch, for non-payment of rent or damages. See, for example,Tabor v. Bellman (1919), 13 Ohio App. 382; Whitmore v. Meenach (App. 1940), 33 Ohio Law Abs. 95, 99 ("Where the breach is compensable in money a tender of payment of the amount due will ordinarily be deemed sufficient reason to avoid forfeiture."); Peppe v. Knoepp (1956),103 Ohio App. 223, 224 ("The court did not err * * * in applying the well-recognized principle that `equity abhors a forfeiture and will only decree it when such relief is clearly required,' and that breach of conditions as to payment of rent alone does not necessarily require such action."); Southern Hotel Co. v. Miscott, Inc. (1975), 44 Ohio App.2d 217.
In the case sub judice, LMHA sought restitution of appellant's residence due to a violation of the terms of appellant's lease as the result of the seizure of illegal drugs from appellant's residence. Thus,Gorsuch and the cases cited therein are clearly distinguishable. Therefore, given the above law, there was no reason for the trial court to consider appellant's equitable argument as it was not applicable.
Additionally, it is well settled that one who seeks equity must come into court with clean hands. Marinaro v. Major Indoor Soccer League
(1991), 81 Ohio App.3d 42, 45. The court in Marinaro stated: "The maxim, `he who comes into equity must come with clean hands,' requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of his suit." Id. After noting that Marinaro engaged in reprehensible conduct, i.e. taking bribes, the court denied equitable relief.
In this case, appellant violated her lease agreement by allowing illegal drug activity in her residence. At trial, appellant acknowledged she knew the father of her children had some drugs in her residence. This was a violation of the terms of her lease with LMHA as well as reprehensible conduct in this era of rampant drug abuse, with the associated criminal activity and resultant health problem. Given the volume of drugs discovered in appellant's residence, particularly the five bundles of marijuana found in her kitchen and the two large baggies of cocaine, totaling 1981.16 grams, and three baggies of crack cocaine, totaling 119.85 grams, all found in her kitchen freezer, appellant cannot claim "clean hands" or a right to equitable relief.
Accordingly, appellant's second assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Sylvania Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________ Peter M. Handwork, JUDGE
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.
[1] Section 10 of appellant's lease with LMHA provides:
 "CRIMINAL ACTIVITY: It is a serious violation of the terms of this lease when a tenant, member of the tenant's household, his guest, or any other person under tenant's control engages in any criminal activity that threatens the health, safety or right to peaceful enjoyment of LMHA's premises by the other tenants, or employees of LMHA, or engages in any drug-related criminal activity on or near LMHA's premises." (Emphasis in original.)
[2] The officer testified that a bundle was between one half and one pound.
[3] A public housing authority ("PHA"), such as LMHA, is required to give a tenant written notice of any proposed termination of the tenant's lease. Section 966.4(l)(2), Title 24, C.F.R. § 966.4(l)(3)(ii), Title 24, C.F.R. provides in relevant part, "the notice of lease termination to the tenant shall state specific grounds for termination, and shall inform the tenant of the tenant's right to make such reply as the tenant may wish. * * *" "A PHA is required to set forth the specific grounds for termination in the notice `to insure that the tenant is adequately informed of the nature of the evidence against him [or her] so that he [or she] can effectively rebut that evidence.' (Citations omitted.)"Cuyahoga Metro. Hous. Auth. v. Younger (1994), 93 Ohio App.3d 819, 825. The court in Younger, after noting that "Termination notices have been found to be insufficient where they contain only one sentence, are framed in vague and conclusory language, or fail to set forth a factual statement to justify termination," held that the notice in Younger failed to comply with the federal regulations. Id. The court held that the notice "failed to set forth a factual statement of the incident or incidents which constituted the grievance" and that the notice merely contained:
 "* * * vague and broad allegations that unauthorized persons were in Younger's unit and that her neighbors were disturbed by activities therein. Moreover, the notice was even more so deficient because it contained an allegation that there were `possible' illegal activities occurring within the unit. If CMHA did not have any concrete facts to support this allegation, there would be no easy way for Younger to refute it. * * * Moreover, the notices failed to identify the individuals involved in the alleged incidents. * * *" Id. at 825-826.