[Cite as *Gorsuch Homes, Inc. v. LeMasters*, 2016-Ohio-3211.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY


GORSUCH HOMES INC.,

    PLAINTIFF-APPELLEE,             CASE NO.  10-15-18

    v.

PAMELA LEMASTERS,                O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Celina Municipal Court**
**Trial Court No. 2015-CVG-00709**

**Judgment Affirmed**

**Date of Decision:  May 31, 2016**


**APPEARANCES:**

    *Debra A. Lavey* **for Appellant**

    *James A. Tesno* **for Appellee**

**SHAW, P. J.,**

{¶1} Defendant-Appellant, Pamela LeMasters, appeals the judgment of the Celina Municipal Court finding in favor of Plaintiff-Appellee, Gorsuch Homes, Inc. ("Gorsuch Homes"), on Gorsuch Homes's complaint for eviction. On appeal, LeMasters argues that the trial court erred by: (1) allowing Gorsuch Homes to rely upon grounds not cited in the notice of termination; (2) finding that Gorsuch Homes proved material noncompliance of the lease by a preponderance of the evidence; and (3) failing to weigh the equitable considerations in favor of LeMasters. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On October 5, 2015, Gorsuch Homes filed a complaint for eviction in the Celina Municipal Court against LeMasters. In its complaint, Gorsuch Homes alleged that LeMasters had "unlawfully and forcibly held over the [lease] term, in that she [had] violated the terms of the Lease and by reason thereof [Gorsuch Homes] is entitled to restitution of the premises." (Docket No. 1, p. 1). Gorsuch Homes attached the following as exhibits: the lease agreement entered into between Gorsuch Homes and LeMasters, including the "Community Rules & Regulations"; and the notice to leave the premises that was served to LeMasters. The terms of the lease provided, in part:

> 13. General Restrictions:
>     The Tenant agrees not to: * * * use the unit for unlawful purposes; engage in or permit unlawful activities in the unit, in the common areas or on the project grounds; * * * make or

permit noises or acts that will disturb the rights or comfort of neighbors. * * *

* * *

23. Termination of Tenancy:

* * *

    c. The Landlord may terminate this Agreement for the following reasons;

    (1) the Tenant's material noncompliance with the terms of this agreement;

    * * *

    (6) criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control:

    (a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises);

    * * *

    (10) if the Landlord determines that the tenant, any member of the tenant's household, a guest or another person under the tenant's control has engaged in the criminal activity, regardless of whether the tenant, any member of the tenant's household, a guest or another person under the tenant's control has been arrested or convicted for such activity.

    * * *

    d.

    * * *

The term material noncompliance with the lease includes: (1) one or more substantial violations of the lease; (2) repeated minor violations of the lease that (a) disrupt the livability of the project; (b) adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment to the leased premises and related project facilities, [sic] (c) interfere with the management of the project, [sic] or (d) have an adverse financial effect on the project[;] (3) failure of the tenant to timely supply all (including, but not limited to, failure to meet the disclosure and verification requirements for Social Security Numbers, or failure to sign and submit consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies), [sic] and (4) Non-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law.

* * *

e. If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice and the grounds for the proposed termination. * * * All termination notices must: * * * state the grounds for termination with enough detail for the Tenant to prepare a defense * * *

f. If an eviction is initiated, the Landlord agrees to rely only upon those grounds cited in the termination notice required by paragraph e.

(Docket No. 1, Ex. A, p. 4, 9-10.)

{¶3} The notice of termination of the lease stated that LeMasters was being evicted due to "Material Non-Compliance of the Lease Agreement in that [sic]

-4-

Allowing a non-trespassed [sic] individual onto the property continually." (Capitalization sics.) (Docket No. 1, Ex. B, p. 1.)

{¶4} A hearing on the merits was held on October 26, 2015.

{¶5} Sabrina Bailey was the first to testify. Bailey testified that she worked as the manager for Gorsuch Homes, specifically at Williamsburg Square Apartments. She stated that LeMasters moved into her apartment in March 2014. Bailey identified McMasters's lease agreement with Gorsuch Homes and the eviction notice served to LeMasters, which were later admitted into evidence. She added that she prepared both documents.

{¶6} Bailey testified that LeMasters was being evicted for material noncompliance with the lease. Next, counsel asked, "Specifically in what manner?", and Bailey replied, "Specifically criminal activity by a visitor." Trial Tr., p. 8. At that time, LeMasters, acting pro se, objected on the grounds that Gorsuch Homes was relying upon grounds outside of the eviction notice, which was directly contrary to the language of the lease. The eviction notice, as drafted by Bailey, stated that LeMasters was being evicted due to material noncompliance with the lease agreement, specifically "Allowing a non-tresspassed [sic] individual onto the property continually." Trial Tr., Plaintiff's Ex. B, p. 1. In response, counsel for Gorsuch Homes stated, "Your Honor, I believe the testimony will get to the fact that there was a criminal activity by a person who was told they were

not allowed to be at the premises, which is a non trespassed [sic] individual, which is specifically what's noticed in the or stated in the Notice." Trial Tr., p. 8. The court took LeMasters's objection under advisement, and the testimony continued.

{¶7} Bailey testified that the specific activities that gave rise to the eviction notice were separate occasions when James LeMasters ("James"), LeMasters's husband, trespassed on Gorsuch Homes's property after being served with a no trespass order. Bailey explained that she drafted a no trespass order after law enforcement was called out to the property because of disturbances involving LeMasters and James. She stated that she served the no trespass order on LeMasters, mailed a copy to James, and delivered copies to the Celina Police Department and the Mercer County Sheriff's office sometime in July. Bailey added that LeMasters appeared grateful and promised that James would no longer step foot on the property. She testified that she saw James on the property after serving the no trespass order.

{¶8} Bailey stated that she next spoke with LeMasters after she served LeMasters the eviction notice. According to Bailey, LeMasters did not deny that James had been on the property, but tried to explain that she could not get him to leave because she was financially reliant on James.

**{¶9}** Bailey testified that she was aware of two accounts of criminal activity committed by James at LeMasters's apartment. Then, the following exchange took place between counsel for Gorsuch Homes and Bailey:

Q: And, in fact, were you aware that criminal charges were filed?

A: After they were filed, yes.

Q: Were those charges for *domestic violence*?

A: Yes.

(Emphasis added.) *Id.* at p. 13-14.

**{¶10}** Bailey concluded her direct testimony by stating that she discussed the notice of eviction with LeMasters, listened to what LeMasters had to say, and then passed that information on to the appropriate people in the chain of command.

**{¶11}** On cross-examination, Bailey explained that she did not meet with LeMasters in person to discuss the eviction notice. Rather, she stated that she spoke on the phone with LeMasters regarding the eviction notice. During this phone conversation, Bailey testified that she told LeMasters that she had no control over the eviction and that LeMasters had to take her complaints up with corporate.

**{¶12}** Sally Prater was the next witness to testify on behalf of Gorsuch Homes. Prater testified that she was the maintenance technician for Gorsuch

Homes. Prater stated that she knew LeMasters and James. She explained that she knew LeMasters because she had worked in LeMasters's apartment while LeMasters was residing there. Further, she explained that she knew James due to the instances that gave rise to the no trespass order.

{¶13} Prater testified that she witnessed two instances involving LeMasters and James. Regarding the first incident, Prater stated that she was walking down the sidewalk of the apartment complex one day and heard yelling. She explained that she initially continued on her way, but then she heard someone screaming "get off of me, get off of me" and a child crying. *Id.* at p. 20. Prater testified that she banged on LeMasters's door until LeMasters opened the door. Prater recalled asking LeMasters if LeMasters wanted her to call the police and LeMasters told her not to call the police because James was leaving. Prater added that she stayed there until James left the premises. During the ordeal, Prater explained that she called another employee, Rhonda Caudill, to witness the event. The second incident occurred sometime in July 2015. Prater testified that she watched LeMasters's door open up and that James had been the one that opened the door. LeMasters and James then left in her vehicle.

{¶14} Prater stated that she was aware that James was not to be on the premises because Bailey had informed the staff of the situation. She testified that

she had also witnessed James bring fast food in to LeMasters's apartment and drive LeMasters's car on and off the property, but could not remember the dates.

{¶15} On cross-examination, Prater admitted that she could not recall when the first incident occurred.

{¶16} Rhonda Caudill was the final witness to testify on behalf of Gorsuch Homes. Caudill testified that she was employed by Gorsuch Homes and that her duties including housekeeping, grounds and office assistance for the apartment complex. Caudill stated that she knew LeMasters and James.

{¶17} Caudill testified that she witnessed part of the first incident that Prater testified to witnessing. She recalled that Prater called her over to the apartment. When Caudill arrived, she remembered seeing that a child was crying and that LeMasters appeared to be in distress.

{¶18} Caudill recalled a second incident involving LeMasters and James where she was able to overhear the two arguing. She admitted that she never saw either one of them, but could recognize each person's voice.

{¶19} On cross-examination, Caudill admitted that the only time she actually saw James on the property was the first incident. She stated that she knew that the second incident occurred after the no trespass order was served, but could not remember the date.

{¶20} At this point in the hearing, Bailey was allowed to testify, out of sequence, to establish that the no trespass order was served on June 12.

{¶21} Given this additional information, Caudill could not remember the date of the second incident.

{¶22} At the conclusion of Caudill's testimony, Gorsuch Homes rested.

{¶23} Then, the court told LeMasters the following: "Why don't you do a combination of testifying and closing at once and mitigation. And I'll listen to it all, put it in the package." *Id.* at p. 31.

{¶24} LeMasters stated that it had been several months since any incidents had occurred involving James at the apartment. She did not deny the fact that instances had occurred involving James that led neighbors to call the police. LeMasters added that she did not seek criminal charges against James at the time because she was scared. Further, she explained that her only source of income was the child support paid by James and that she was afraid that if he were to go to prison, then the child support payments would stop.

{¶25} LeMasters explained how she had reconnected with her family and that since this happened James has not set foot in the apartment. She stated that she has not had contact with him. At the conclusion of her statements, LeMasters rested.

**{¶26}** The court found in favor of Gorsuch Homes on its complaint for eviction and ordered that LeMasters vacate the premises within 27 days. After acknowledging its sympathy for LeMasters and stating that James was the one at fault, the court stated,

> I have to have you move. I have to have you move. I'm going to do something I normally don't do. I'm going to give you more time than I normally would give you to move. * * * Really not supposed to be more than ten days. * * * What I'm going to do, and this is quite a bit more than I would, I'm going to give you until Sunday November the 22nd. Now that's really about three weeks.

*Id.* at p. 40-41. The court concluded by telling LeMasters, "I think you've done all you can." *Id.* at p. 41. The court memorialized its decision in an entry filed on October 26, 2015.

**{¶27}** LeMasters filed this timely appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**APPELLEE RELIED UPON GROUNDS NOT CITED IN THE NOTICE OF TERMINATION IN VIOLATION OF THE LEASE, FEDERAL LAW AND THE HUD HANDBOOK.**

### *Assignment of Error No. II*

**APPELLEE FAILED TO PROVE MATERIAL NONCOMPLIANCE OF THE LEASE BY A PREPONDERANCE OF THE EVIDENCE.**

## *Assignment of Error No. III*

**THE TRIAL COURT FAILED TO WEIGH EQUITABLE CONSIDERATIONS IN FAVOR OF MS. LEMASTERS.**

{¶28} Due to the nature of LeMasters's assignments of error, we elect to address some of them together.

## *Assignments of Error Nos. I & II*

{¶29} In her first and second assignments of error, LeMasters argues that the trial court erred by allowing Gorsuch Homes to rely upon grounds not cited within the notice of termination and, therefore, Gorsuch Homes failed to prove its case by a preponderance of the evidence. We disagree.

{¶30} It is well established that "the due-process protections of the Fourteenth Amendment to the United States Constitution are applicable to landlords who lease federally subsidized housing to low-income tenants[.]" *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711, ¶ 26 (3d Dist.), citing *Showe Mgt. Corp. v. Hazelbaker*, 12th Dist. Fayette No. CA2005–11–031, 2006-Ohio-3619, ¶ 14; *Gorsuch Homes, Inc. v. Wooten*, 73 Ohio App.3d 426 (2d Dist.1992), citing *Cincinnati Metro. Hous. Auth. v. Harris*, 1st Dist. Hamilton Nos. C–820540, C–820541, 1983 WL 8893 (June 15, 1983); *Joy v. Daniels*, 479 F.2d 1236 (C.A.4. 1973); *Lopez v. Henry Phipps Plaza S., Inc.*, 498 F.2d 937 (C.A.2. 1974); *Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (C.A.2. 1970); *Geneva Towers Tenants Org. v. Federated Mtge.*

*Investors*, 504 F.2d 483 (C.A.9. 1974). Further, "tenants receiving federal housing-assistance payments have a constitutionally protected property interest in their continued occupancy of subsidized housing." *Id.*

**{¶31}** Additionally, private landlords offering federally subsidized housing must comply with all applicable federal rules and regulations. *Id.* at ¶ 27, citing *Ivywood Apts. v. Bennett*, 51 Ohio App.2d 209, 214 (10th Dist.1976).

**{¶32}** 24 C.F.R. 880.607(c) requires a landlord to give "written notice of any proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specified date and advising the family that it has an opportunity to respond to the owner." Moreover, the regulations require that if a judicial action is initiated to evict the tenant/s, then "the [landlord] may not rely on any grounds which are different from the reasons set forth in the notice." *Id.*

**{¶33}** This court has found that the "manifest purpose [of the notice of termination] is to afford procedural due process to tenants in federally subsidized housing to protect tenants against discriminatory and arbitrary eviction procedures." *Real Properties Servs. Mgt. v. Harigle*, 3d Dist. Crawford No. 3-96-21, 1997 WL 430773, *3 (July 30, 1997). Moreover, "due process requires a federally-funded landlord to pursue an eviction only on the grounds listed in the termination notice. This must be so 'to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut

that evidence.' " *Cincinnati Metro. Hous. Auth. v. Patterson*, 1st Dist. Hamilton No. C-130161, 2013-Ohio-5323, ¶ 17, quoting *Escalera*, 524 F.2d at 862.

**{¶34}** Here, Gorsuch Homes, in its notice of termination, alleged that LeMasters had materially failed to comply with the lease by "allowing a non-trespassed individual onto the property continually." It should be noted that both counsel and this court at oral argument on appeal discussed whether the term "non-trespassed individual" used in the notice of termination was a confusing and poor choice of wording, creating a possible impression that James was in fact, *not* a trespasser as opposed to a trespasser. To be clear, this court continues to believe the term "non-trespassed individual" constitutes an extremely poor choice of words for any written legal document.

**{¶35}** However, it should also be noted that there was no issue raised in the trial court in this regard and in fact, the transcript demonstrates that all parties and the court at trial were fully apprised, prepared and proceeded with the clear understanding that the notice and termination of the lease was based upon James' continued entry onto the common and private areas of the apartment complex as a trespasser, in violation of a no trespass order placed upon him.

**{¶36}** Nevertheless, on appeal, LeMasters now complains that Bailey and other representatives of Gorsuch Homes were erroneously permitted to testify that LeMasters was being evicted due to "criminal activity" by James including prior

-14-

instances of domestic violence against LeMasters on the premises, all of which was outside the limited allegation of "trespass" contained in the written notice of termination. We disagree.

**{¶37}** In the first place, trespass itself would constitute a "criminal activity" so the mere characterization of the trespass as such by any witness would not necessarily be erroneous or outside the scope of the written notice. LeMasters disputes this citing authority that an owner of an apartment complex cannot prohibit guests invited by the tenant from being present in the tenant's apartment. See, *State v. Hites,* 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809, *2 (Aug. 8, 2000). However, this ignores the fact that in the present case, James was also seen on multiple occasions trespassing in violation of the *landlord's* no trespass order, not only within LeMasters's apartment but upon the *common areas* of the apartment complex owned and controlled by the *landlord,* not the tenant. Thus, it is clear that LeMasters was evicted due to her willing participation in James' multiple and unlawful violations of the landlord's no trespass order. As a result, the record also demonstrates and supports the trial court's determination that James' conduct resulted in multiple violations of Section 13 of the lease prohibiting tenants from allowing guests to engage in unlawful activity.

**{¶38}** More importantly, however, it is clear from the record that all of the witnesses who testified as to alleged criminal activity by James, including the

testimony about at least two prior instances of domestic violence by James against LeMasters, introduced that testimony merely as an explanation of the circumstances which led to the *reason for the no trespass order* and not as an independent ground for the termination as alleged by LeMasters. It is also clear that in this bench trial, the trial court also regarded this testimony in such a context only and not as an independent or supplemental basis for its ruling to uphold the termination.

{¶39} Additionally, the evidence of domestic violence on at least two occasions also further demonstrated the need for the no trespass order by illustrating the *consequences of the trespass violation* by James in terms of inconvenience, disturbance of peaceful enjoyment by and danger posed to the other tenants and in particular to the employees of the landlord, two of which testified that they were unavoidably forced into the untenable and unacceptable position of having to personally intervene in and mediate at least one altercation between James and LeMasters on the premises.

{¶40} For the foregoing reasons, LeMasters's argument raised for the first time on appeal, that the trial court's order and termination was in fact based upon the instances of domestic violence, and thereby violated the Violence Against Women Reauthorization Act of 2013 under 42 U.S.C. 14043e-11(b)(2)(A), is not

an accurate characterization of the trial court's order and is without merit in this instance.

*Assignment of Error III*

**{¶41}** Finally, we note the record shows that LeMasters in many, if not all instances enabled, aided and abetted the continued trespass by James onto both the common and private areas of the premises, thereby creating the disturbance and risk to the other tenants and employees of Gorsuch Homes described above. As a result, LeMasters's argument in her third assignment of error that in making its ruling, the trial court failed to sufficiently weigh other equitable considerations in favor of LeMasters, is also without merit.

**{¶42}** For all of the foregoing reasons, the first, second and third assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**ROGERS, J. dissenting.**

**{¶43}** Tenants with federally subsidized housing are given more protections than if they were in a normal landlord-tenant relationship. Two of these protections include that the landlord agrees to rely only upon the grounds stated in its notice of eviction and that the grounds stated in the notice will be specific to

provide the tenant with an adequate opportunity to *prepare* a defense. Because the majority ignores these two fundamental principles, I dissent.

**{¶44}** Regarding the first principle, Gorsuch Homes, in its notice of termination, indicated that it was evicting LeMasters due to noncompliance with the lease, specifically "allowing a non-trespassed individual onto the property continually." At the eviction hearing, Bailey testified that LeMasters was being evicted due to "criminal activity by a visitor." Trial Tr., p. 8. LeMasters objected and argued that Gorsuch Homes was attempting to rely on grounds not contained in its notice. At this juncture, counsel for Gorsuch Homes explained that the criminal activity was allowing a "non-trespassed individual" onto the property, which would be consistent with Gorsuch Homes's position in its notice. However, there are several holes in Gorsuch Homes's argument that require reversal.

**{¶45}** The first is the definition of "non-trespassed individual." There is a clear dispute between both parties as to what this term means. The majority also believes that "the term 'non-trespassed individual' constitutes an extremely poor choice of words for any written legal document." (Majority Opin., at ¶34). But rather than defining the phrase "non-trespassed individual," the majority simply concludes that there was no harm because everyone, including LeMasters, was aware that LeMasters was being evicted because of James's actions.

**{¶46}** R.C. 2911.21(A)(1) defines "trespass" as when a person "without privilege to do so, * * * [k]nowingly enter[s] or remain[s] on the land or premises of another." Black's Law Dictionary defines the prefix "non" as "[n]ot; no" while it is also defined as "not" in other dictionaries. *Black's Law Dictionary* 1212 (10th Ed.2014); Webster's Third New International Dictionary 1535 (2002). Thus, using the plain meaning of the terms, a "non-trespassed individual" would be someone who has *not* knowingly entered on to the land of another without privilege to do so. Or in other words, a "non-trespassed individual" is not a trespasser.

**{¶47}** With this definition in mind, Gorsuch Homes clearly was not relying on the grounds stated in its notice because a "non-trespassed individual" is not committing criminal activity by being on the property. Therefore, reversal was warranted.

**{¶48}** Second, even if one were to take Gorsuch Homes's bizarre conclusion that "non-trespassed individual" means someone that has committed criminal trespass, reversal would nonetheless be required because no criminal activity constituting a trespass occurred. In support of her argument, LeMasters cited *State v. Hites*, 3d Dist. Allen No. 1-2000-22, 2000 WL 1114809 (Aug. 8, 2000), for the proposition that a guest of a tenant cannot be convicted of criminal trespass for being on the property without the landlord's permission. The majority

distinguishes *Hites* by saying that *Hites* only stands for the position that a guest cannot be convicted while being present in the tenant's apartment and that a guest could be convicted for being present in areas controlled and owned by the landlord. Therefore, because Gorsuch Homes was evicting LeMasters for the instances where James was seen in the parking lot and the common area, James's conduct could be construed as criminal trespass. The problem is that *Hites* does not support what the majority claims.

In *Hites*,

> The trial court found that although lessees generally have the right to invite 'any person of their choosing inside their residence as long as such visitation [does] not interfere with the rights of other tenants or violate [the] lease agreement, * * * it is without question that the landlord can control access to common areas and prohibit those persons not allowed on the premises from being in those areas.

*Hites* at *2. Thus, the trial court concluded, like the majority here, that a guest can be convicted of criminal trespass for being in the common areas if the landlord does not want him there. However, *this* court disagreed. Rather, this court adopted the Eleventh District Court of Appeals decision and reasoning in *City of Kent v. Hermann*, 11th Dist. Portage No. 95-P-0042, 1996 WL 210780 (Mar. 8, 1996), that an "owner may not preclude tenants from inviting guests onto the premises, *including the common areas*." (Emphasis added.) *Id.* This court also agreed that just as " 'a landlord gives up his possessory interest in the rental unit[,] * * * the landlord's rights in limiting common ingress and egress ways to guests of

the tenant must also be generally qualified so as to permit access to the renter's apartment.' " *Id.*, quoting *Hermann* at *3. Given that we are bound by our precedent in *Hites*, I would find that the trial court erred by finding in favor of Gorsuch Homes. Although it can be argued that James's presence during the two instances allegedly involving domestic violence might have resulted in the loss of quiet enjoyment and use of the property of other tenants, the instances for which LeMasters was evicted did not interfere with that right. Thus, Gorsuch Homes failed to present any evidence that LeMasters was in material noncompliance with the lease.

{¶49} In regard to the second protection, Gorsuch Homes's notice clearly lacks the specificity required to allow a tenant, such as LeMasters in this case, to adequately prepare a defense.[1]

{¶50} 24 C.F.R. 247.4(a) requires, amongst other things, that a landlord "state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense[.]" "Termination notices have been found to be insufficient where they contain only one sentence, are framed in vague and conclusory language, or fail to set forth a factual statement to justify termination."

---

[1] It is my position that this argument would not require an analysis under plain error because although LeMasters did not specifically argue that the notice was insufficient as to specificity, she did argue that the notice was insufficient as Gorsuch Homes relied upon something other than what was contained in the notice. Both arguments invoke due process concerns. Further, it has been found that when a tenant makes broad due process objections without naming the specific statute, regulation, or other right being violated he sufficiently preserves the argument for appeal. *See Commons v. King*, 2d Dist. Montgomery No. 13159, 1992 WL 288781, *4 (Oct. 14, 1992).

*Cuyahoga Metro. Hos. Auth. v. Younger*, 93 Ohio App.3d 819, 825 (8th Dist.1994). The following notices have been found to have been insufficient: "[s]erious, repeated damage to unit. Repeated disturbance." *Assoc. Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 10 (8th Dist.1985); "Repeated incidents of intoxication and irresponsible use of the kitchen facilities in your Unit [which] have imposed a threat [to] the peaceful enjoyment and safety of your neighbors." *Hous. Auth. of DeKalb Cty. V. Pyrtle*, 167 Ga.App. 181, 183, 306 S.E.2d 9 (1983); "Record of antisocial activities and arrests of your son, Fred, Jr., constituting a threat to the peace and safety of the community * * * [and] [i]llegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants." *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 858 (2d Cir.1970). In *Younger*, the appellate court found that the notice was insufficient because it contained vague and broad allegations, lacked facts to support those allegations, failed to notify the tenant of the dates of the incidents supporting the allegations, and failed to identify the individuals involved in the alleged incidents. 93 Ohio App.3d at 826. Moreover, the court found that including a specific lease provision violation is insufficient to satisfy the statutory requirements. *Id.*

{¶51} All it takes is a quick review of the notice of termination in this case to find that such notice was clearly insufficient. The grounds for termination in this case were "Material Non-Compliance of the Lease Agreement in that [sic]

Allowing a non-trespassed [sic] individual onto the property continually." (Capitalization sic.) (Docket no. 1., Ex. B, p. 1). The notice fails to identify the alleged "non-trespassed individual." This is not a minor oversight as even the majority is still confused as to the true meaning of the term. Further, the notice fails to provide any specific dates that the "non-trespassed individual" was on the property at LeMasters's behest. Rather, the notice contains merely vague and broad allegations. Such statements are plainly insufficient to notify LeMasters of Gorsuch Homes's argument so as to allow her the opportunity to prepare a defense.

{¶52} The majority attempts to combat this argument by saying that there was no harm because LeMasters was well apprised of why she was being evicted, but that is irrelevant to the analysis because the due process concern is not that a tenant will not be able to present a defense if there is insufficient notice. Rather, the due process concern arises from the tenant's inability to *prepare* an adequate defense to the alleged charge. *See, e.g.*, *Gold Key Realty/Senior Village Apts. v. Phillips*, 2d Dist. Montgomery No. 26450, 2015-Ohio-2555, ¶ 25, quoting *Northland Village Apts. v. Hamp*, 2d Dist. Montgomery No. 12407, 1991 WL 108717, *1 (June 20, 1991).

{¶53} Further, some courts have gone so far as to find that such deficiencies in notices of termination remove jurisdiction from the trial court. *See*

*Riverview Towers Associates v. Jones*, 358 N.J.Super. 85, 90, 817 A.2d 324 (2003); *Glastonbury Hous. Auth. v. Martinez*, Conn. Sup. No. 82600, 1995 WL 621849, *2 (Oct. 16, 1995); *Central Brooklyn Urban Development Corp. v. Copeland*, 471 N.Y.S.2d 989, 992 (1984). Even though jurisdiction has not been raised by either party, this court is "bound to raise any jurisdictional questions not raised by the parties." *Levinsky v. Boardman Twp. Civ. Serv. Comm.*, 7th Dist. Mahoning No. 04 MA 36, 2004-Ohio-5931, ¶ 26. I would find that such an inadequate notice would never invoke the trial court's jurisdiction. Accordingly, I would reverse on this separate ground.

{¶54} Federally subsidized housing is a constitutionally protected right for those in the program. Landlords, such as Gorsuch Homes, cannot be allowed to continue to evict tenants, such as LeMasters, using vague and overly broad statements contained as the grounds for eviction. Rather, their notices must be specific as to allow each tenant the right to adequately prepare a defense to the charges. Only then can we, as a reviewing court, say that the tenant's due process rights were adequately protected.

{¶55} Accordingly, I dissent.

**/jlr**